Neal *et al.*, *vs.* Patten.

---

JOHN NEAL *et. al.*, plaintiffs in error, *vs.* GEORGE PATTEN, defendant in error.

1. Sales by administrators and executors, when it is not otherwise provided by will, of any property of the estate, except annual crops, carried to market, must be at public outcry, to the highest bidder, and the purchaser is bound to see that the administrator, or executor, is apparently proceeding under the prescribed forms.

2. To constitute a legal private sale, by an executor, or administrator, of annual crops, they must be actually carried to market, and sold. They cannot be sold on the plantation.

3. A mere direction in a will, that the executor, as soon as practicable, pay the debts, does not authorize the executor to sell, much less to sell at private sale, the effects of the estate coming into his hands.

4. A witness may state that one acted as agent, but this does not show his power to act, nor the extent of the authority, nor can a witness prove an agency by stating that he has seen the writing containing the appointment. The paper must be produced, or, if properly accounted for, its execution and contents must be proven.

5. Where there is proof that an appointment of an agent is in writing,

and the question is as to the extent of the power, the paper must be produced, or accounted for, and the agency is not proven by showing complaints, by the principal of the agent, and by his employing counsel to get the effects out of the agent's hands.

6. If there be statements in an answer in equity, not responsive to the bill, and the Court charge the jury that the defendant's answer, in response to the bill, is evidence, it is error in the Court, if it fail to charge that matter, not in reply to the charges, is not evidence. The Court ought, either by specific mention of the points not responsive, or by general instructions, according to the nature of the case, to point out to the jury the application of the rule to the bill and answer to the Court.

7. Where a bill charged that the defendant had bought the property of an estate from one who was neither executor nor administrator, and the answer admitted the purchase, but set up that the person selling was the agent of the executor, and in proof annexed what purported to be a power of attorney from the executor, the answer setting up the agency is not evidence, and the power of attorney must be proven in the manner prescribed in other cases.

Executor's Sales. Agency. Lien of Judgments. Before Judge CLARK. Mitchell Superior Court. November Term, 1869.

Neal, on behalf of himself and such creditors as might join him, filed a bill against Jubal Cochran, as executor of Allen Cochran, their common debtor, and certain others, creditors, etc., to adjust the equities between the creditors, and for other purposes. Our concern, at present, is with those other purposes. He averred as follows: He owned a judgment against Allen Cochran, principal, and one Burney, as security, for $4,875 00, principal, $336 48, interest, up to the 24th of December, 1861, and another against him as principal, and one Dumos, as security, for $7,609 00, principal, $1,057 00, interest, up to said date, with interest on each since said date, and costs. In November, 1863, Allen Cochran died testate, leaving Jubal Cochran his executor, who qualified and, as such executor, took charge of his estate. Part of the estate was a plantation in Mitchell county, Georgia, stock, produce, etc., the emancipation of the slaves, and the neglect and waste of said executor, have made said estate insolvent. One F. T. Polhill, either with or without Jubal Cochran's consent, took charge of said plantation, stock, crops, etc., and either

permitted them to be ruined and wasted, or used them for himself, 'and now claims part, if not all of the crops, as his own.   Polhill and Jubal Cochran are insolvent.

George Patten combined with Polhill to remove ninety bales of cotton from said plantation, Patten claiming to have bought them from Polhill, as executor of said deceased. This cotton is worth say $18,000 00.   Patten has removed thirty-seven of said bales out of said county, and appropriated them to his own use, and was removing the others, when they were levied on by the *fi. fa.*, founded on said judgment, last named, and by another *fi. fa.*, in favor of Crutchfield.   Polhill is not executor of said deceased, if he were, he could not by a sale of the assets of deceased, divest the lien of judgment creditors thereon, except by a sale in the regular course of administration, and by paying said judgments with the proceeds. He prayed that the said fifty-three bales of cotton should be sold to pay said judgments, and that Patten should account for the thirty-seven bales taken away.

Patten answered that Polhill sold him ninety-one bales of cotton, under and by virtue of a power of attorney from Jubal Cochran, as executor, as aforesaid.  He attached a copy of said power to his answer, as part of it.   (It is in the usual form, made the 7th of December, 1863, authorizing Polhill to do all things which he, Jubal Cochran, could do, in managing said estate.)   This purchase was made on the 19th of November, 1864, by H. J. Cook, as his agent ; Polhill then styled himself executor of said deceased, and Patten supposed he was, till he learned about his said agency.   Polhill gave Cook a written obligation for said cotton, which Cook afterwards transferred to Patten.  The price paid for it was eighty-five cents per pound, was *bona fide*, and without any knowledge of any judgments against said deceased.

He claimed that the personal property of deceased was first chargeable with the payment of his debts, that it was the duty of the executor, or his agent, to sell it and pay the debts, that such sale, *bona fide* made, vests absolute title in the purchaser, and he is not bound to see to the application of the proceeds, and the liens attach to the proceeds of such sale, but do not

follow the property.   He took thirty-five bales of said cotton in October, 1865, and sold them for $5,625 00, in May, 1866.   He charged that the money paid by his agent to Polhill, was by Polhill used at par to discharge the debts of said deceased, and thus was said estate benefited by his purchase.

The Court ordered the issues as to this cotton to be tried separately, from the other matters in the bill.   Counsel for complainant read in evidence the will of Allen Cochran.   It made Jubal Cochran his executor, gave to him, as trustee for testator's two daughters, the whole estate, for their separate use, etc., and authorized him to pay his debts, in these words: "I wish all my just bebts paid by my executor, as soon as practicable."   The will contained nothing else.   It was probated on the 7th of December, 1863.   They then introduced Neal's said *fi. fa.* against Allen Cochran and Dumas, and a *fi. fa.* in favor of one Webb against said deceased, for $11,-729 86, principal, $1,390 53, interest, and costs, founded on a judgment, obtained in August, 1860.   On each of these *fi. fas.* was a levy upon said fifty-three bales of cotton, stated to be on said plantation, and the property of said deceased.   Neal's levy was made on the 13th of November, 1865, and Webb's on the 13th of February, 1866.   Neal's *fi. fa.* had been levied on them in October, 1865, but that levy was dismissed, seemingly because of non-compliance with what was then known as the stay-law.   They showed that the cotton was on said plantation at the dates of said levies, and it appeared that Polhill then was in possession of the plantation.

Defendant's counsel showed that Polhill had possession of said plantation and controlled it in 1865 and 1866, and employed the overseer.   One witness said he knew that Jubal Cochran, dissatisfied with Polhill's management, and wishing to get rid of him, had a Receiver appointed who took charge of the property on the plantation, sold it and holds the proceeds as Receiver.   He further said that he saw a paper purporting to be a power of attorney from Jubal Cochran to Polhill, authorizing Polhill to manage said plantation and property for him; he did not see the paper executed, nor

Neal *et al.*, *vs.* Patten.

know that it ever was; from seeing such paper and knowing Polhill had control, he concluded he was agent for the executor. Complainants' counsel moved to reject said parol evidence, as to Polhill's agency, it appearing that his authority was in writing. This objection was overruled. Defendant's counsel then introduced the account of sales of the ninety-one bales of cotton, giving number and weight of each bale, making an average of forty-seven thousand eight hundred and sixty-four pounds at eighty-five cents—$40,684 40, accompanied by the following receipt, or bill of sale: "There is stored under a shed, and at the gin house, in the county of Mitchell, in this State, ninety-one bales cotton, which I have sold to H. J. Cook, which he has paid me for. Said ninety-one bales cotton I will keep for said H. J. Cook, or his order, for twelve months, should he wish it to stay where it is, at his risk. I will take all the prudent care I can of the same. It is about one hundred yards from any chimney.

F. T. POLHILL, Executor.

A. COCHRAN,    Executor.

Albany, Georgia, November 19, 1864.

(Endorsed) H. J. COOK."

The evidence being closed, complainant's counsel requested the Court to charge the jury: 1st. To make an executor's sale valid, he must be expressly authorized to sell by the will, or by an order of the Ordinary; the sale must be made by the executor in person, and not by his agent, and especially not by an agent not expressly authorized to sell; the sale must be made in the manner prescribed by the will, and if not therein prescribed, in the manner of administrator's sales, and if not so made, the purchaser will get no title. 2d. No sale by an executor, though it be otherwise good, will be good as against a judgment creditor, who has a lien upon the property sold. 3rd. The answer of Patten, setting up that Polhill was the agent of Jubal Cochran, the executor, is a fact not responsive to the charges in the bill and is not to be considered by the jury as evidence of such agency, and, 4th. If Patten purchased the cotton from Polhill, as the executor of the will, when he was not such executor,

Patten got no title by such purpose, and the property remained the property of the estate.

The Court refused to give the 1st, 2d and 3rd of said requests in charge, charged the 4th, with this qualification: "But if Polhill sold as executor and was not executor, but was an agent authorized to sell, the sale was valid," and further charged as follows: The answer of defendant so far as it is responsive to the allegations in the bill, are to be taken as true, unless contradicted by the oath of two witnesses, or one witness and corroborating circumstances. The complainants charge fraud and fraudulent combination on the part of defendant, in getting control of said cotton. If he obtained the cotton through fraud, he takes nothing by his purchase, and the property is still the property of Allen Cochran's estate and subject to the lien of complainant's *fi. fas.* Defendant denies all fraud and says he bought the cotton for a valuable consideration, without notice, and claims that he is protected. This part of defendant's answer must be taken as true, unless contradicted by the oaths of two witnesses, or one witness and corroborating circumstances. The answer of the defendant that he obtained the cotton by purchase from Polhill, the agent of Jubal Cochran, deceased, is also responsive to the allegations and interrogatories in complainant's bill, and is to be taken as true, unless contradicted according to law. If Polhill was the agent of the executor for the sale of the cotton, could he sell it? It is the opinion of the Court that he could sell it, as agent, so as to transfer the title to a *bona fide* purchaser. If such a sale was made to a *bona fide* purchaser, it operated to vest a perfect title in him and to defeat the lien of the judgments, and if these are the facts proven, you will find for the defendant, otherwise for the complainants."

The jury found for the defendant. Complainant's counsel moved for a new trial, upon the following grounds: The verdict was contrary to the evidence, because there was no evidence of a regular administration of said ninety bales of cotton; or if there was, Patten's title is subordinate to the lien of said judgments; there was no evidence that said cot-

*Neal et al., vs. Patten.*

ton was of the annual crops grown by the executor, since testator's death, and sent off to market, and yet the sale was private, and without an order of the Ordinary; such sale was void, because private, and without order, and was not authorized by the will; because it appearing that Polhill acted under a written authority, and that not being produced, there was no evidence of his agency; because the Court refused to give said 1st, 2d, and 3rd requests in charge, and in qualifying the 4th request as he did, because this qualification assumed that Polhill was the executor's agent, that he was authorized to sell, and that he did sell as agent; because each clause of the charge given is erroneous, and because the Court refused to rule out the parol testimony of Polhill's agency.

The Court refused the new trial, and error is assigned on each of said grounds.

VASON & DAVIS, LYON, DEGRAFFENREID & IRVIN, for plaintiff in error, cited Irwin's Code, sections 2513, 2514, 3526, and 22 Ga. R., 600, to show that the sale was illegal, and 10th Ga. R., 568, and 14th Ga. R., 423, as to divesting lien by sale.

JAMES L. SEWARD, HENRY MORGAN, A. P. WRIGHT, for defendants, said a private sale is good : Bond vs. Murdock, 1st Kelly (Ga. R.) 324 ; Oglesby vs. Gilmore, 5th Ga. R., 56. The purchaser is not effected by want of order : 13th Ga. R., 18 ; nor is he bound to see how the proceeds are applied : 2 Spence's Eq. Juris., 373, 374 ; 1st Story's Eq. Juris., par. 579, 80, 81 ; 14 Vesey, 353 ; 17th Vesey, 154 ; Toller's Exrs., 256 ; 1 Roper on Legacies, 298–9 ; 14th Ga. R., 315.

McCAY, J.

1. It is the positive provision of our statutory law that sales by administrators and executors shall be at *public outcry,* except sales of annual crops sent off to market, and of vacant lands, and in case of sale, by direction of a will, when the bill directs or permits a private sale : Code, sections 2514, 2526, 2412.

Some question has been made whether in case of a sale of mere personal estate, it is necessary to get an order of the Ordinary to make the sale such as will pass the title out of the estate. It is contended that the *legal* title is in the administrator, and that the provisions of the Code directing that the sale is to be under the order of the Ordinary, is only directory to the administrator, and that if he fail to act under such order, it does not affect the purchaser. This is a very nice question, and we do not now decide it. It is not necessary, in the decision of this case. However, it may be true, as contended, that the purchaser is not bound to see that the administrator is acting under the order of the Ordinary, as required by section 2513 of the Code, it is certainly true that the purchaser is bound to see to it that the sale is by public outcry. The purchaser is bound to see that the sale is *apparently* under the prescribed forms. A private sale, when the law requires a public one, is plainly and notoriously *not* apparently under the prescribed forms, and such a sale of property required by law to be sold at public sale, conveys no title at law: Code, sec. 2586.

2. As to annual crops. The statute expressly provides that they must be carried to market in order to supercede the necessity of a public sale. The reason is obvious. Sale in the public market is in effect a public sale. In practice, there is a competition among the buyers, and there are certain established usages as to weights, storage, etc., which answer all the purposes of a public sale. At any rate, this is the clear language of the law, and a crop sold upon the plantation, and not carried to market, is not sold "apparently under the prescribed forms," if sold at a private sale: Section 2514, Code.

3. Nothing is better settled than that a mere direction in a will to pay the debts does not authorize an executor to sell without an order of the Ordinary, (Code, section 2526,) much less does it authorize a private sale, since by section 2526 of the Code, even though the power to sell be given, yet if the mode is not directed by the will, it is the duty of the executor to pursue the mode prescribed for administrators.

From the whole of this record it appears that there was no legal sale of this property, because it was not a public sale, and because, though it was cotton, (whether it was annual crops does not appear,) it was not carried to market. It seems to have been an admitted fact that this cotton was sold, not by the executor, but by a Mr. Polhill, who, it is claimed, was the agent of the executor.

4. It was, we think, proven by parol evidence that Polhill was taking care of and managing the property for the executor. But we do not think proof of this is any proof of a power to the agent *to sell*. The real question here was not whether Polhill was superintending the plantation, and taking care of the property for the executor; that, perhaps, might be proven by Polhill's acts, and we are not sure that to this extent the parol proof was not right. The Court seems, however, to have gone further, and allowed Mr. Smith to prove the agency by a statement that he saw the power of attorney.

As the Court presented this case to the jury, the whole case turned upon the power of Polhill to sell. The *fact* that he acted as agent does not prove his power to act any more than the fact that he sold proves his power to sell, and even if the proof were plain, that with the approbation and consent of the executor, Polhill was in general charge of the plantation and effects of the estate, we do not think that *any* proof of a power to sell. Indeed, we doubt if at that time an executor could clothe an agent with power to effect a *private* sale, even of property which the executor himself might sell privately. Section 2154 of the new Code was not passed until 1865, and this transaction took place in 1863.

5. But it was plain in this case that whatever powers Polhill had, were in writing. Patten is a privy of Polhill; he claims under him, and his title depends upon Polhill's powers, and their extent. Those powers were defined by a writing, and so long as that writing is accessible, it is the best proof of its own terms. Perhaps the mere fact that Polhill acted as agent, and that the executor recognized him as an agent, might have been proven properly by parol, but an

agent and an agent with power to sell, are different things. The real question here was the *extent* of the agent's power, and the fact that he was agent in the management of the plantation, did not establish, or go to establish, his power to sell the property which might be found there. His powers were defined by the written power, and that ought to have been produced.

6. The bill in this case charged that Patten and Polhill had combined and confederated together to move this cotton, that a portion had been moved and sold by Patten, and that they were about to move the remainder. Patten replies that he had bought the cotton in 1863 from Polhill, and that Polhill was the agent of the executor, with authority from him, by power of attorney, to sell, and the answer sets forth what purports to be a copy of the power, and adds further, that the proceeds of the sale were paid out by Polhill to the debts of the testator. The Court charged the jury that the answer of the defendant responsive to the bill was evidence, and could only be overcome by a witness, and circumstances equal to a witness, and that Patten's answer as to the agency was responsive.

We think this charge was error for two reasons. The general charge was right enough, but under the circumstances it was entirely too meagre. Here was in fact a statement by Patten that the proceeds of the cotton had been used by Polhill to pay the debts of the testator; clearly this was *not* responsive, and as the Court had made the general charge, it was clearly the duty of the Court to charge the alternative rule, that when the answer was not responsive it was not evidence. We do not intend to say that in all cases it is the duty of the Court to charge this alternative. But if there be in fact matter not responsive, which is material, and the Court lays down the general rule in such cases, he ought also to lay down the other rule, that matter not responsive is only pleading, and is not evidence. We think, too, as it is a question of law, what is and what is not responsive, that in cases where there is in a bill both classes of matter, the Court ought to point out to the jury the distinction, and in-

Neal *et al.*, *vs.* Patten.

form them, either by general principles or by specific mention of the irresponsive matter, of the bearing of the rule on the bill and answer before the Court.   If the Court enters upon the question of the effect of the answer, he ought to do it so as to do equal justice to both parties, according to the case before him.

It is very possible that under this general charge the jury may have considered Patten's answer, as to the disposition of the proceeds of the cotton, as evidence, and in this way have done great injustice to the complainant.   But we do not think Patten's answer, that Polhill was the agent of the executor, was responsive to any charge in the bill.   The bill charges that the cotton was the property of the deceased, Allen Cochran, and that Polhill and Patten had illegally assumed control of it, that thirty-seven bales of it had been taken away from the place by Patten and sold, and that there was danger that the remainder would also be taken away.   To this Patten replies, admitting that he had taken the thirty-seven bales, and claiming that he had bought the whole from Polhill as executor, but finding this was a mistake, he adds by a subsequent answer, that he bought from Polhill as the agent of the executor, and he then sets forth what purports to be a copy of the power of attorney.   It is assumed that this answer as to Polhill's agency is responsive to the bill, and that the statement by Patten of this fact, and the production of the copy of the power proves the agency.

Is the statement in the answer and the exhibit proof that Polhill was the agent of the executor, responsive to the bill? It is settled that when the defendant admits the charges of the bill, he cannot discharge himself by setting up new facts. The bill charges that the cotton was the property of the deceased, and that Patten and Polhill had gotten the custody of it, and were proceeding to remove and dispose of it.   The answer admits the fact charged in the bill, but sets up that Polhill is the agent of the executor, and that having been clothed with authority to do so, he had sold the cotton to Patten.   It seems to us that this is within the meaning of the rule to which we have referred.   In the English Chancery Courts

the example put, of responsive and irresponsive matter is, that an admission in an answer of the receipt of money, and a statement that at the same time it was disbursed, is all responsive, because the whole is stated as one act.   But if the statement be that it was disbursed next day, or at some future time, then the statement of disbursement is not responsive : Hart vs. Ten Eyck, 2 John. C., 94.

Here is an admission by Patten that he had taken and disposed of thirty-seven bales of the cotton, an admission that the whole had belonged to the deceased, and a statement of a wholly new and distinct avoidance, to-wit : that the executor had made Polhill his agent, with power to sell, that under this he had sold, and that Patten bought and paid for the cotton.   It is the setting up of a title, it is a new and distinct state of facts, not alluded to in the bill, and entirely matter of avoidance.

7. But the charge of the Court on this point is error for another reason.   Admitting that the bill had denied any authority in Polhill to sell, and called for an answer, yet if it appeared by the answer that the authority was in writing, then the answer does not prove the agency.   An answer is but parol evidence.   If the fact stated be a fact that the law requires to be proven in a particular way, then it must be proven in that way.   The execution of a deed must be proven in equity, as well as at law, by the subscribing witnesses, and it does not follow that because a fact stated in an answer is in contradiction of certain charges in the bill, if the fact be one that must be proven by the production of a paper, that the necessity of producing and proving the paper is dispensed with.   The point of this case was, did Polhill have power to sell?   Whether he did or did not, (assuming that the executor could give the power,) depends upon a written paper, as admitted by the answer.   How does the defendant know that the copy he offers of this paper is correct? How does he know that it is not a forged paper?   Does he profess to have been present at its execution, or to know anything upon the subject?   His statements are mere hearsay. He refers to a paper, and professes to set forth its contents,

yet there is no proof that such a paper ever existed, nor is there any excuse given why the paper itself is not before the Court. By the English rule, and by the Chancery practice in this country, when there is a replication to the answer, all deeds and other exhibits must be proven as at law.   Chancery does not dispense with the rule that the best evidence must be produced, that deeds must be proven by the subscribing witnesses, that parol evidence will not be heard when the parties have reduced their agreements to writing, etc.   These are as much rules of equity evidence as of legal .evidence.   An answer is but parol evidence, and can only, if there be a replication, be proof of such matters as parol evidence can establish.

For these reasons we think the Court below erred, and we reverse the judgment.